1  Michael A. Caddell (SBN 249469)
   mac@caddellchapman.com
2  Cynthia B. Chapman (SBN 164471)
   Craig C. Marchiando (SBN 283829)
3  **CADDELL & CHAPMAN**
   1331 Lamar, Suite 1070
4  Houston TX 77010
   Telephone: (713) 751-0400
5  Facsimile: (713) 751-0906

6  Devin H. Fok (SBN 256599)
   **THE LAW OFFICES OF DEVIN H. FOK**
7  P.O. Box 7165
   Alhambra CA 91802-7165
8  Telephone: (310) 430-9933
   Facsimile: (323) 563-3445
9  devin@devinfoklaw.com

10 Leonard A. Bennett (*pro hac vice forthcoming*)
   Matthew J. Erausquin (SBN 255217)
11 **CONSUMER LITIGATION ASSOCIATES, P.C.**
   763 J. Clyde Morris Blvd., Suite 1A
12 Newport News VA 23606
   Telephone: (757) 930-3660
13 Facsimile: (757) 930-3662

14 *Attorneys for Plaintiff*

15              **UNITED STATES DISTRICT COURT**
                **CENTRAL DISTRICT OF CALIFORNIA**
16                    **WESTERN DIVISION**

17 GARY L. SMITH, JR., on behalf of )   **CV 13-  6262** JFW(VPKx)
   himself and all others similarly  )   No.
18 situated,                          )
                                      )   **ORIGINAL COMPLAINT**
19            **Plaintiff,**          )   **CLASS ACTION**
                                      )
20        vs.                         )   **DEMAND FOR JURY TRIAL**
                                      )
21 HARBOR FREIGHT TOOLS USA,          )
   INC.,                              )
22                                    )
              **Defendant.**          )
23

                    **PRELIMINARY STATEMENT**

24      1.     This is a consumer class action challenging Defendant Harbor Freight's

25 widespread violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681–1681x

26 ("FCRA") in its hiring process. When employers like Harbor Freight use consumer-

27

28

                                      1

background reports as a factor in their decision to hire, promote, reassign, or terminate employees, the FCRA imposes certain strictures on those employers. Specifically, the FCRA requires that an employer first disclose its intent to use a background report in its hiring decision and must obtain the prospective employee's written authorization to do so, and the employer's disclosure must be "in a document that consists solely of the disclosure." 15 U.S.C. § 1681b(b)(2)(A). Harbor Freight fails to meet this most-simple of requirements, as its disclosure of intent to use a background report also contains a purported release of the prospective employee's claims against both Freight Harbor and the agency which prepared the report, A-Check America, Inc.

2.      The FRCA also imposes upon employers who use background reports to make hiring decisions the requirement that—before taking an adverse action—the employer provide the prospective employee with a copy of the report and a summary of the employee's FCRA rights. Harbor Freight provides neither.

3.      Separately, the CCRAA requires that an employer like Harbor Freight, who uses background reports to make hiring decisions, advise the consumer when it takes an adverse action based in whole or in part on information contained in a report. Harbor Freight routinely fails to so advise consumers.

4.      Plaintiff brings claims for these violations of the FCRA and CCRAA for himself and all individuals in the Classes described below.

## JURISDICTION AND VENUE

5.      Jurisdiction of this Court arises under 15 U.S.C. § 1681p and 28 U.S.C. § 1331 and supplemental jurisdiction exists for the state law claims under 28 U.S.C. § 1367.

6.      Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b).

**PARTIES**

7.    Plaintiff Gary L. Smith, Jr. is an adult individual who at all times relevant hereto resided in Long Beach, California.

8.    Defendant Harbor Freight Tools USA, Inc. is a Delaware corporation that regularly conducts business in the Central District of California. Harbor Freight also maintains its corporate headquarters within this District and Division.

**FACTUAL ALLEGATIONS**

**A.    Defendant's Practices In Using Background Reports in Its Hiring Process**

9.    Defendant is a nationwide retailer of tools and equipment, which staffs its retail locations with consumers like Plaintiff.

10.    The FCRA defines a "consumer report" as "any written, oral, or other communication of *any information* by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, mode of living which is used or expected to be used for . . ." among other things "(B) employment purposes." (emphasis added).

11.    The FCRA limits the use of consumer reports, including background reports like those at issue in this case, to only certain instances.

12.    When an employer like Harbor Freight chooses to screen applicants by using background reports, it subjects itself to the strictures of the FCRA.

13.    As part of its hiring process, Defendant uses a standardized form in which it discloses to consumer-applicants its intention to obtain a consumer report about them, and it also obtains the consumer's written permission to obtain that report.

14.    On information and belief, job applicants in all 400-plus Harbor Freight locations receive and execute a form disclosure identical to the one Plaintiff received and executed.

3

15.     The FCRA explicitly requires that the disclosure of an employer's intent to obtain a background report on an applicant be contained in a "stand alone" document, and that the authorization be "clear and conspicuous."

16.     Harbor Freight uses a disclosure that preys on applicants' ignorance or desire to please their prospective employer, as Harbor Freight includes within the disclosure form the following statement:

> I release all parties and persons from any and all liability for any damages that may result from furnishing such information to Harbor Freight Tools as well as from the use or disclosure or [sic] such information by the company or any of its agents, employees, or representatives.

17.     Harbor Freight's form also contains additional information not permitted under the FCRA's requirement that the document "consist solely of the disclosure," as it also confusingly states:

> I am willing that a photocopy of this authorization be accepted with the same authority as the original, and I specifically waive the need to receive a written notice for disclosure of information from any present or former employer who may provide information based upon this authorization.

> **NOTICE:** This form is the property of A-Check America, Inc. No alterations to its content may be made without the prior written consent of its author. Any changes made without A-Check's authorization are considered a breach of contract.

18.     Separately from the requirement that employers use clear, stand-alone documents to obtain authorizations to procure background reports for employment uses, the FCRA also requires that employers provide consumers with notice before basing an adverse-employment action against consumers on information contained in those reports.

19.     In addition, the CCRAA requires that a user of a consumer reports for employment purposes advise the consumer when an adverse action is being taken against the consumer, a step that Harbor Freight uniformly fails to take in its hiring (or failure to hire) process.

4

20.    Defendant relies on a consumer reporting agency to supposedly meet those requirements but, as set forth in more detail below, these attempts fail as to virtually every Harbor Freight applicant.

**B.    Factual Background of Plaintiff's Application for Employment with Harbor Freight**

21.    On approximately October 28, 2011, Plaintiff Smith applied for employment with Defendant at a job fair Defendant organized to staff a soon-to-open location in Long Beach, California.

22.    Defendant interviewed Smith and determined he was qualified for a sales position, and offered him the position pending the outcome of a background screen.

23.    As part of the Defendant's process for obtaining a background report about him, Smith signed a form authorization that Defendant provided.

24.    The form authorization contained the statements set forth above in Paragraphs 16 and 17.

25.    Once the interview was over, Smith did not hear anything from Harbor Freight regarding his application.

26.    After approximately one week passed, Smith received a letter from A-Check, the company Defendant hired to perform the background screen, which was purportedly from Defendant Harbor Freight.

27.    That letter stated, among other things, that Harbor Freight's "decision to employ [Smith] may be based in whole or part upon the enclosed consumer report," and that "it is important that [Smith] contact A-Check America" as soon as possible to dispute any inaccuracies on his report. The letter also included a copy of Smith's A-Check report and a summary of his FCRA rights.

28.    Sometime later, Smith received a second letter, again from A-Check but purportedly from Defendant Harbor Freight.

29.     This second letter stated that Smith was not eligible for employment with Harbor Freight because of his background.

30.     Then unbeknownst to the Plaintiff, in reality, the adverse employment decision had already been completed and implemented by A-Check, acting in the capacity as the delegee and agent of Defendant.  On information and belief, Plaintiff alleges that A-Check not only obtained and created the consumer report used for the employment decision, but it also adjudicated that report to determine whether or not Plaintiff would be eligible for the position and when it made the determination that he would not based on the report, A-Check then handled the output, printing, and delivery of the notices on Harbor Freight letterhead that informed the Plaintiff of the adverse decision.

31.     As a result of A-Check's planned, uniformly executed system of applicant adjudication, however, Plaintiff received his pre-adverse and adverse-action notices *after* the decision not to hire him had been made, not before.

**C.      Facts Common to Plaintiff and Similarly Situated Consumers**

32.     Plaintiff alleges that the process of disclosure (or non-disclosure) and the timing of mailed notices alleged above was routinely used by Harbor Freight and A-Check for all or nearly all of Harbor Freight's employment applicants.

33.     The date on the supposed pre-adverse action letter does not represent in any uniform manner the date on which that pre-adverse letter was mailed to employment applicants.

34.     Instead, the date of mailing was at least a day or two after the date appearing on the pre-adverse action letter.

35.     Under these circumstances, the pre-adverse action letter is a token gesture at best, and a nullity at worst. However interpreted, the letter does not comply with the FCRA.

36.     Because Defendant cannot delegate its duties under the FCRA, Defendant is liable for the foregoing conduct of A-Check as its authorized agent.

37.     On information and belief, Plaintiff alleges that Harbor Freight had actual or constructive knowledge that A-Check was not fulfilling its contractual obligations to send compliant FCRA notices on behalf of Harbor Freight.

**D.     Applicable Law**

38.     Section 1681b(b)(2)(A) of the FCRA regulates the conduct of persons who obtain a "consumer report" about employees or prospective employees as follows (with emphasis added):

> Except as provided in subparagraph (B) [in cases of a consumer applying for a position over which the Secretary of Transportation may establish qualifications], a *person* may not procure a *consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless –*
>
> a.     a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, *in a document that consists solely of the disclosure,* that a consumer report may be obtained for employment purposes; and
>
> b.     the consumer has authorized in writing (which authorization may be made on the document referred to in clause (a)) the procurement of the report by that person.

39.     Section 1681b(b)(2)(A) therefore imposes upon Defendant the duty to provide a "clear and conspicuous" disclosure to prospective or current employees that a consumer report about them will be procured. Further, section 1681b(b)(2)(A) mandates that the disclosure must be limited only to a disclosure that a consumer report may be obtained for employment purposes and to the written authorization of the prospective or current employee; no other documents or provisions are allowed. Section 1681b(b)(2)(A) thus prohibits Defendant from including or obtaining other information as part of the disclosure such as a release or waiver of rights or by using multiple, conflicting documents to obtain the authorization.

40.     Additionally, section 1681b(b)(3)(A) of the FCRA regulates the conduct of any person who uses a "consumer report" to take an adverse action against any employees or prospective employees as follows:

> Except as provided in subparagraph (B) [in cases of a consumer applying for a position over which the Secretary of Transportation may establish qualifications], in using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates –
>
> i.     a copy of the report; and
>
> ii.    a description in writing of the rights of the consumer under this subchapter, as prescribed by the Federal Trade Commission under section 1681g(c)(3) of this title.

41.     The purpose of section 1681b(b)(3)(A) is to provide a prospective or current employee a sufficient amount of time to review the consumer report, correct any inaccuracies, and to notify the prospective employer of these inaccuracies before an adverse action is taken.

42.     Harbor Freight did not provide Smith and members of the putative Class with copies of their background reports at any time before it took an adverse action against them.

43.     This failure by Harbor Freight to give any sort of notice before taking an adverse action against Smith and other applicants violated a well-established FCRA requirement.

44.     Defendant procured consumer reports for Smith and those similarly situated for employment purposes without first obtaining their written authorization to do so with a clear and conspicuous written disclosure in a document that consists solely of the disclosure that a consumer report may be obtained for employment purposes.

45.     Defendant failed to provide a copy of the consumer report a sufficient amount of time before it took the adverse action to allow Smith to discuss the report with Defendant or otherwise respond before the adverse action was taken.

46.     Defendant failed to hire Smith without providing him with any advance notice that it was going to take that adverse action, without providing him with a copy of the consumer report, and without providing him with a summary of his rights under the FCRA.

47.     Separately, section 1785.20.5 of the CCRAA imposes upon employers the requirement that they disclose to applicants that an "adverse action has been taken and supply the name and address or addresses of the consumer credit reporting agency making the report."

48.     Harbor Freight failed in this requirement, as it did not advise Smith that it was taking an adverse action against him.

**E.     Harbor Freight is Responsible for A-Check's Failure to Comply with the FCRA and CCRAA**

49.     On information and belief, A-Check marketed to Harbor Freight a service by which A-Check would assume Harbor Freight's FCRA obligations to notify applicants that they did not meet Harbor Freight's criteria for employment.

50.     A-Check explains that it can tailor its Pre-Adverse/Adverse notification services to each client, and that it allows clients like Harbor Freight the option of having "A-Check generate and mail notifications in compliance wityh [sic] FCRA requirements."[1]

51.     A-Check therefore markets itself to Harbor Freight and other, similar employers as knowledgeable and competent in both preparing accurate background

---

[1] *See* http://www.acheckamerica.com/services/adverse-letters-and-applicant-disputes.aspx.

1  checks and in implementing an employer's hiring criteria to those background
2  checks and providing employer notices in accordance with the FCRA.

3      52.    On information and belief, Harbor Freight agreed to have A-Check mail
4  pre-adverse and adverse action notices, and A-Check mailed pre-adverse and adverse
5  action notice letters to Plaintiff and members of the putative Classes.

6      53.    Of course, for A-Check to be able to mail adverse-action notices, A-
7  Check must have access to Harbor Freight's hiring criteria and a final hiring decision
8  must have been made.

9      54.    On information and belief, Harbor Freight and similar employer-clients
10  of A-Check provide A-Check with their hiring criteria so that A-Check can then
11  compare the backgrounds of applicants against those criteria and adjudicate
12  applicants as eligible or ineligible for hire.

13      55.    On information and belief, A-Check performs the adjudication of
14  Harbor Freight applicants like Plaintiff without any interaction or communication
15  with Harbor Freight at all.

16      56.    In offering to employers its service of notifying consumer applicants of
17  adverse actions, A-Check explains on its website that "[t]he process includes a pre-
18  adverse notification letter notifying the applicant of intent to deny employment based
19  on the report, and then an adverse action notification letter to inform the applicant
20  they will not be employed based on information in the report."[2]

21      57.    While it recommends a five-day window between the mailing of the
22  pre-adverse and adverse action notices, A-Check's process in practice cannot meet
23  the FCRA requirements for notice *before* an adverse action is taken. The mailing of
24  separate letters, spaced days apart, is nothing more than a facial attempt to comply
25  with the FCRA.

26

27  _____
28  [2] *Id.*

10

58.    Because A-Check possesses Harbor Freight's hiring criteria and performs background checks itself, on information and belief, A-Check immediately determines—upon performing a background check—whether an applicant's background meets Harbor Freight's hiring criteria.

59.    After A-Check makes Harbor Freight's hiring decision, it sends a pre-adverse-action notice, waits approximately five days, and then sends the final adverse-action notice.

60.    In reality, however, the adverse action has been taken before the pre-adverse notice is even created, because A-Check has already compared the background report it produced against Harbor Freight's hiring criteria and determined that the applicant is ineligible for employment with Harbor Freight. The mailing of notice letters is simply a backhanded, failed attempt at FCRA compliance.

61.    The procedure that A-Check follows to "satisfy" the FCRA employer requirements (without actually involving the employer) when an adverse action is to be taken is ineffective because the adverse-employment decision is final as of the date on which A-Check conducts its background check on the applicant. As a recent Federal Court has explained in a comparable case, "LexisNexis also adjudicated plaintiffs. The member employers did not conduct any review of the adjudication, and thus the adjudication of plaintiffs is, quite literally, a decision for employment purposes that adversely affects plaintiffs." *Goode v. LexisNexis Risk & Info. Analytics Group, Inc.*, 848 F. Supp. 2d 532, 539 (E.D. Pa. 2012) (citing 15 U.S.C. § 1681a(k)(1)(B)(ii)).

62.    After this adverse action adjudication, A-Check mails a letter that it claims constitutes a "pre-adverse action" notice otherwise required by Harbor Freight pursuant to 15 U.S.C. § 1681b(b)(3). When this notice is sent, however, the decision not to hire the applicant has already been made. If no action is taken by the consumer to dispute or correct a report, there is no new action or task performed by

11

Harbor Freight. At best, a consumer's dispute would constitute a condition subsequent to the adverse action—changing that which has occurred.

63.    A-Check confirms this series of events on its website, where it further explains that "[i]f an applicant has been sent a pre-adverse letter, and has not contacted A-Check to dispute their report within 5 business days, an adverse letter may be sent."[3]

64.    In Plaintiff's case, A-Check began the background check on Plaintiff on November 8, 2011 and finished it on November 9, 2011.

65.    Upon finishing the report, A-Check adjudicated Plaintiff as ineligible for hire by Harbor Freight, noting Plaintiff "does not meet company standards" in the "Adjudication" field of his report.

66.    A-Check mailed Plaintiff a pre-adverse-action notice, his consumer report, and a summary of FCRA rights in a letter dated November 14, 2011.

67.    The letter from A-Check and its enclosures failed to comply with the FCRA and did not satisfy Harbor Freight's separate duty to provide such documents.

68.    Not only did A-Check date and mail the letter after the day it made Harbor Freight's decision not to hire Plaintiff, but Plaintiff did not receive the letter until several days after Defendant decided not to hire him.

69.    Neither A-Check nor Harbor Freight provided Plaintiff a copy of his report and a disclosure of FCRA rights in a sufficient amount of time before they took an adverse action to allow Plaintiff to rectify any inaccuracies in the report.

70.    A-Check later mailed Plaintiff a second letter, dated November 21, 2011, which Freight Harbor will likely claim constituted the actual "adverse action" of refusing to employ Plaintiff. At the time A-Check mailed this second notice,

---

[3] *Id.*

12

1  however, it had long-since decided that Plaintiff was ineligible for employment with

2  Harbor Freight.

3      71.   As a result of these procedures, Defendant failed to provide Plaintiff

4  with a copy of the consumer report and a description in writing of his FCRA rights

5  before taking an adverse action against him based in whole or in part on the

6  consumer report A-Check created.

7  **F.    Harbor Freight Acted Willfully**

8      72.   Defendant's procedures and conduct were willful. They were carried out

9  in the manner that Defendant intended and not by mere accident or mistake.

10      73.   The statutory language and mandates restricting and governing

11  Defendant's business have been in effect for decades.

12      74.   Defendant's conduct was at least reckless in failing to make an

13  appropriate and effective effort to ascertain the FCRA and CCRAA provisions

14  governing its conduct.

15      75.   Defendant knew or should have known about its legal obligations under

16  the FCRA. These obligations are well established in the plain language of the FCRA

17  and in caselaw applying those provisions.

18      76.   Defendant obtained or had available substantial written materials that

19  apprised it of its duties under the FCRA and CCRAA. Any reasonable employer

20  knows about or can easily discover these mandates.

21      77.   Despite at least the constructive knowledge of these legal obligations,

22  Defendant acted consciously in breaching its known duties and depriving Smith, and

23  similarly situated individuals, of their rights under the FCRA.

24      78.   As a result of these FCRA violations, Defendant is liable to Smith and

25  similarly situated individuals for statutory damages from $100 to $1,000 pursuant to

26  15 U.S.C. § 1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. §

27

28

1    1681n(a)(2) for the FCRA violations alleged herein, and for attorney's fees and costs

2    pursuant to § 1681n and § 1681o.

3        79.    Apart from the FCRA violations, Defendant is liable to Smith and

4    similarly situated individuals under the CCRAA for punitive damages of between

5    $100 and $5,000 per Class Member as well as equitable relief pursuant to CAL. CIV.

6    CODE § 1785.31(a)(2)(B), (b).

7        80.    In the alternative to the Plaintiffs' allegations that these violations were

8    willful, they allege that the violations were negligent and will seek certification of

9    that issue.

10                       **CLASS ACTION ALLEGATIONS**

11   **A.    The FCRA Class**

12       81.    Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings this

13   action on behalf of himself and the following Class, initially defined as follows:

14           All employees or prospective employees of Defendant residing in the
             United States (including all territories and other political subdivisions of
15           the United States) who were the subject of a consumer report which was
             used by Defendant to make an employment decision during the FCRA
16           statute of limitations period, 15 U.S.C. §1681p, next preceding the filing
             of this action and during its pendency.
17

18   **B.    The FCRA Sub-Classes**

19       82.    Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings this

20   action on behalf of himself and the following Sub-classes, initially defined as

21   follows:

22       a.   All employees or prospective employees of Defendant residing in
             the United States (including all territories and other political
23           subdivisions of the United States) who were the subject of a
             consumer report which was used by Defendant to make an
24           employment decision during the FCRA statute of limitations
             period, 15 U.S.C. §1681p, next preceding the filing of this action
25           and during its pendency, against whom Defendant took an adverse
             action based in whole or in part on information contained in the
26           consumer report before providing a copy of the consumer report
             as required by the FCRA, 15 U.S.C. § 1681b(b)(3)(A)(i);
27

28

                                          14

b.  All employees or prospective employees of Defendant residing in the United States (including all territories and other political subdivisions of the United States) who were the subject of a consumer report that also contained Esteem or other retail theft database information and which was used by Defendant to make an employment decision during the FCRA statute of limitations period, 15 U.S.C. §1681p, next preceding the filing of this action and during its pendency, against whom Defendant took an adverse action based in whole or in part on information contained in the consumer report before providing a description in writing of the rights of the consumer under the FCRA, as required by the FCRA, 15 U.S.C. §1681b(b)(3)(A)(ii).

**C.   The California Notice Class**

83.   Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings this action on behalf of himself and the following Class, initially defined as follows:

All employees or prospective employees of Defendant residing in the United States (including all territories and other political subdivisions of the United States) who applied for work or who were employed at a Harbor Freight Tools USA, Inc. location in the State of California and who were the subject of a consumer report which was used by Defendant to make an employment decision during the FCRA statute of limitations period, 15 U.S.C. §1681p, next preceding the filing of this action and during its pendency.

**D.   Application of Rule 23 to the Classes**

84.   **Numerosity – FED. R. CIV. P. 23(a)(1).** The Class members are so numerous that joinder of all is impractical. The names and addresses of the Class members are identifiable through documents maintained by the Defendant, and the Class members may be notified of the pendency of this action by published and/or mailed notice.

85.   **Existence and Predominance of Common Questions of Law and Fact – FED. R. CIV. P. 23(a)(2) and (b)(3).** Common questions of law and fact exist as to all members of the Classes. These questions predominate over the questions affecting only individual members. These common legal and factual questions include, among other things:

a.  Whether Defendant's employment application included a standalone document that contained only the "clear and conspicuous" disclosure mandated by section 1681b(b)(2)(A);

b.     Whether Defendant's procedure violated section 1681b(b)(2)(A) by failing to make a "clear and conspicuous" disclosure in a document that consists solely of the disclosure;

c.     Whether Defendant's standard procedure of denying employment without first providing the disclosures required by section 1681b(b)(3)(A) violated the FCRA;

d.     Whether Defendant's reliance on A-Check to notify consumers of adverse actions complies with the CCRAA;

e.     Whether the uniform timing of Defendant's FCRA disclosures complied with section 1681b(b)(3)(A)(ii); and

f.     Whether Defendant knowingly and intentionally acted in conscious disregard of the rights of consumers.

86.     **Typicality – FED. R. CIV. P. 23(a)(3).** Plaintiff's claims are typical of the claims of each Class Member. For class certification purposes, Plaintiff seeks only statutory and punitive damages. Plaintiff would only seek individual or actual damages if class certification is denied. In addition, Plaintiff is entitled to relief under the same causes of action as the other members of the Classes.

87.     **Adequacy of Representation – FED. R. CIV. P. 23(a)(3).** Plaintiff is an adequate representative of the Classes because his interests coincide with, and are not antagonistic to, the interests of the members of the Classes he seeks to represent, he has retained counsel competent and experienced in such litigation, and he intends to prosecute this action vigorously. FED. R. CIV. P. 23(a)(4). Plaintiff and his Counsel will fairly and adequately protect the interests of members of the Classes.

88.     **Superiority – Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the Class Members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. FED. R. CIV. P. 23(b)(3). The statutory and punitive damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for the members of the Classes individually to redress effectively the wrongs done to them.

Even if the members of the Classes themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendant's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case.

89. **Injunctive Relief Appropriate for the Class.** Class certification is appropriate because Defendant has acted on grounds generally applicable to the Classes, making appropriate equitable injunctive relief with respect to Plaintiff and the Class Members. FED. R. CIV. P. 23(b)(2); *see* CAL. CIV. CODE § 1785.31(b).

<u>**CLAIMS FOR RELIEF**</u>

**COUNT I—VIOLATION OF FCRA SECTION 1681b(b)(2)(A)(i)**

90. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

91. Defendant willfully violated the FCRA, 15 U.S.C. § 1681b(b)(2)(A)(i), because it failed to provide a clear and conspicuous written disclosure in a document that consists solely of the disclosure to applicants and employees that a consumer report may be obtained for employment purposes.

92. Plaintiff seeks statutory damages for himself and all others similarly situated for this violation pursuant to 15 U.S.C. § 1681n(a)(1)(A).

93. Plaintiff seeks punitive damages and equitable relief for this violation pursuant to 15 U.S.C. § 1681n(a)(2).

94. In the alternative to the Plaintiff's allegations that these violations were willful, he alleges that the violations were negligent and seeks issue certification of that issue and appropriate remedy, if any, under 15 U.S.C. § 1681o.

## COUNT II—VIOLATION OF FCRA SECTION 1681b(b)(3)(A)(i)

95.    Defendant willfully violated the FCRA, 15 U.S.C. §1681b(b)(3)(A)(i), because it failed to provide a copy of the consumer report used to make an employment decision to Plaintiff and all other similarly situated applicants and employees before taking an adverse action that was based in whole or in part on that report.

96.    Plaintiff seeks statutory damages for himself and all others similarly situated for this violation pursuant to 15 U.S.C. § 1681n(a)(1)(A).

97.    Plaintiff seeks punitive damages and equitable relief for this violation pursuant to 15 U.S.C. § 1681n(a)(2).

98.    In the alternative to the Plaintiff's allegations that these violations were willful, they allege that the violations were negligent and seek issue certification of that issue and appropriate remedy, if any, under 15 U.S.C. §1681o.

## COUNT III—VIOLATION OF FCRA § 1681b(b)(3)(A)(ii)

99.    Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

100.   Defendant willfully violated the FCRA, 15 U.S.C. §1681b(b)(3)(A)(ii), because it failed to provide Plaintiff and all other similarly situated applicants and employees the summary of rights required by this section of the FCRA before taking an adverse action that was based in whole or in part on a consumer report.

101.   Plaintiff seeks statutory damages for themselves and all others similarly situated for this violation pursuant to 15 U.S.C. § 1681n(a)(1)(A).

102.   Plaintiff seeks punitive damages and equitable relief for this violation pursuant to 15 U.S.C. § 1681n(a)(2).

103.   In the alternative to the Plaintiff's allegations that these violations were willful, he alleges that the violations were negligent and seek issue certification of that issue and appropriate remedy, if any, under 15 U.S.C. §1681o.

1

## COUNT IV—VIOLATION OF CCRAA § 1785.20.5

2       104.   Plaintiff restates each of the allegations in the preceding paragraphs as if

3   set forth at length herein.

4       105.   The CCRAA, CAL. CIV. CODE § 1785.20.5, requires that a user of a

5   consumer credit report who denies a consumer employment based in whole or in part

6   on information contained in the report must advise the consumer that the adverse

7   action has been taken.

8       106.   Defendant willfully violated the CCRAA, CAL. CIV. CODE § 1785.20.5,

9   because it failed to advise Plaintiff that it was refusing to hire him based on

10  information contained in the report it obtained from A-Check.

11      107.   Plaintiff seeks actual damages for himself and all others similarly

12  situated for this violation pursuant to CAL. CIV. CODE § 1785.31(a)(2)(A).

13      108.   Plaintiff also seeks punitive damages of between $100 and $5,000 per

14  Class Member as well as equitable relief for this violation pursuant to CAL. CIV.

15  CODE § 1785.31(a)(2)(B), (b).

16                          **JURY TRIAL DEMAND**

17      109.   Plaintiff demands trial by jury on all issues.

18  Date: August 23, 2013                    Respectfully submitted,

19                                           CADDELL & CHAPMAN

20

21                                           *Michael A. Caddell*
                                             Michael A. Caddell (SBN 249469)
22                                           mac@caddellchapman.com
                                             Cynthia B. Chapman (SBN 164471)
23                                           Craig C. Marchiando (SBN 283829)
                                             1331 Lamar, Suite 1070
24                                           Houston TX 77010
                                             Telephone: (713) 751-0400
25                                           Facsimile: (713) 751-0906

26

27

28

19

Devin H. Fok (SBN 256599)
**THE LAW OFFICES OF DEVIN H. FOK**
P.O. Box 7165
Alhambra CA 91802-7165
Telephone: (310) 430-9933
Facsimile: (323) 563-3445
devin@devinfoklaw.com

Leonard A. Bennett (*pro hac vice
forthcoming*)
Matthew J. Erausquin (SBN 255217)
**CONSUMER LITIGATION ASSOCIATES,
P.C.**
763 J. Clyde Morris Blvd., Suite 1A
Newport News VA 23601
Telephone:  (757) 930-3660
Facsimile:  (757) 930-3662

***Attorneys for Plaintiff***

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

This case has been assigned to District Judge _____John F. Walter_____ and the assigned Magistrate Judge is _____Victor B. Kenton_____ .

The case number on all documents filed with the Court should read as follows:

### 2:13CV6262 JFW VBKx

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge.

Clerk, U. S. District Court

_____August 27, 2013_____          By  J.Prado_____
Date                                        Deputy Clerk

---

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

**Subsequent documents must be filed at the following location:**

| [x] Western Division | [ ] Southern Division | [ ] Eastern Division |
|---|---|---|
| 312 N. Spring Street, G-8 | 411 West Fourth St., Ste 1053 | 3470 Twelfth Street, Room 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701 | Riverside, CA 92501 |

**Failure to file at the proper location will result in your documents being returned to you.**

---

CV-18 (08/13)                    NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

Name & Address:
Michael A. Caddell (SBN 249469)
Caddell & Chapman
1331 Lamar St., Suite 1070
Houston, TX 77010
713.751.0400

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

Gary L. Smith, Jr., on behalf of himself and all others similarly situated,

PLAINTIFF(S)

v.

Harbor Freight Tools USA, Inc.

DEFENDANT(S).

CASE NUMBER

CV13- 6262 JFW(VPLX)

SUMMONS

TO:   DEFENDANT(S): HARBOR FREIGHT TOOLS USA, INC., 26541 Agoura Road, Calabasas, CA 91302, via its registered agent for service in CA: Corporation Service Company, 2710 Gateway Oaks Drive, Suite 150N, Sacramento, CA 95833

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, _Michael A. Caddell_____, whose address is _1331 Lamar St., Suite 1070, Houston, TX 77010 713.751.0400 (tel), 713.751.0906 (fax)__. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: AUG 2 7 2013

By: _____
Deputy Clerk

(Seal of the Court)

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

CV-01A (10/11)                                    SUMMONS

Name & Address:
Michael A. Caddell (SBN 249469)
Caddell & Chapman
1331 Lamar St., Suite 1070
Houston, TX 77010
713.751.0400

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

Gary L. Smith, Jr., on behalf of himself and all others similarly situated,

                                    PLAINTIFF(S)

                v.

Harbor Freight Tools USA, Inc.

                                    DEFENDANT(S).

CASE NUMBER

CV13- 6262 JFW(VBEx)

**SUMMONS**

TO:   DEFENDANT(S): HARBOR FREIGHT TOOLS USA, INC., 26541 Agoura Road, Calabasas, CA 91302, via its registered agent for service in CA: Corporation Service Company, 2710 Gateway Oaks Drive, Suite 150N, Sacramento, CA 95833

        A lawsuit has been filed against you.

        Within ___21___ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, _Michael A. Caddell_____, whose address is _1331 Lamar St., Suite 1070, Houston, TX 77010 713.751.0400 (tel), 713.751.0906 (fax)_.  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

                AUG 2 7 2013

Dated: _____

Clerk, U.S. District Court

**JULIE PRADO**

By: _____
        Deputy Clerk

        *(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*