EVAN R. MOSES, SB 198099
evan.moses@ogletreedeakins.com
AARON H. COLE, SB 236655
aaron.cole@ogletreedeakins.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
400 S. Hope St., Suite 1200
Los Angeles, CA  90071
Telephone:  213.438.5851
Facsimile:   213.239.9045

PATRICK HULLA (*Pro Hac Vice*)
patrick.hulla@ogletreedeakins.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
4520 Main Street, Suite 400
Kansas City, MO  64111
Telephone:  816.471.1301
Facsimile:   816.471.1303

Attorneys for Defendant
HARBOR FREIGHT TOOLS USA INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY L. SMITH, JR. on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>HARBOR FREIGHT TOOLS USA, INC.,<br><br>Defendant. | Case No. CV13-6262 JFW (VBKx)<br><br>**DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>[Filed concurrently with Declarations of Evan R. Moses and Autumn Clemmens and [Proposed] Order]<br><br>Date:    January 13, 2014<br>Time:    1:30 p.m.<br><br>Action Filed:  August 27, 2013<br>Hon. John F. Walter |

# <u>TABLE OF CONTENTS</u>

**Page**

I.  INTRODUCTION AND MATERIAL FACTS ................................................1

   A.  HFT's Operations ...................................................................................1

   B.  Operative Legal Principles Regarding Plaintiff's FCRA and
      California Claims. ...................................................................................5

         1.  Notice of Intent to Procure a Consumer Report............................5

         2.  Pre-Adverse Action Notice Requirements.....................................6

II. PLAINTIFF'S CLAIMS ARE INAPPROPRIATE FOR
   CERTIFICATION UNDER FED. R. CIV. P. 23. ............................................7

   A.  Plaintiff's (Second) Motion for Class Certification is Untimely. .............7

   B.  Plaintiff did not Comply with the Spirit, or the Letter, of L.R.
      7-3. .......................................................................................................9

   C.  Plaintiff Has Not Met His Burden of Demonstrating Class
      Certification Requirements in Rule 23(a) and (b)...................................9

         1.  Relevant Legal Standards for Class Certification Under Fed.
            R. Civ. P. 23. ..............................................................................9

         2.  Class Certification Thresholds. ...................................................11

             a.  Plaintiff's Proposed Classes Are Not Ascertainable. ...........11

             b.  Smith Has Neither Adduced, Nor Disclosed, Evidence
                Sufficient to Withstand the "Rigorous" Analysis of His
                Proposed Class Claims. ......................................................13

             c.  Smith Cannot Satisfy the Numerosity Requirement of
                Rule 23(a)(1) for His Proposed Classes. ..............................14

             d.  Plaintiff Cannot Satisfy the Typicality Requirement
                Under Rule 23(a)(3). ..........................................................15

             e.  For Similar Reasons, Plaintiff Cannot Satisfy the
                Adequacy Requirement Set Forth in Rule 23(a)(4)..............18

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

f.      Plaintiff Cannot Satisfy Rule 23(a)(2)'s Commonality Requirement and Rule 23(b)(3)'s Predominance Requirement. ........................................................................19

i.      Plaintiff and Class Members Lack Commonality .........................19

ii.     The Predominance Requirement of Rule 23(b)(3) ........................20

g.      Whether the Proposed Disclosure Class Members Received an Insufficient Disclosure Form Will Require Individualized Inquiries........................................................21

h.      When an Adverse Action was Taken Requires Individualized Inquiries........................................................21

i.      Whether any Particular Adverse Action Was Based on Information in a Consumer Report Will Require an Individualized Inquiry. ........................................................22

j.      Questions Regarding Class Members' "Actual" Damages Will Overwhelm Questions Common to the Class...............23

D.   Plaintiff Cannot Show that a Class Action Is Superior to Other Ways to Adjudicate this Action. ....................................................................24

III.   CONCLUSION ...........................................................................25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

# <u>TABLE OF AUTHORITIES</u>

CASES                                                                PAGE(S)

*Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Group, L.P.,*
 247 F.R.D. 156 (C.D. Cal.2007) ....................................................................16

*Bishop v. Saab Auto. A.B.,*
 1996 WL 33150020 (C.D.Cal. Feb.16, 1996)...................................................11

*Comcast Corp. v. Behrend,*
 133 S.Ct. 1426 (U.S. 2013) ..................................................................20, 23, 24

*Cruz v. Dollar Tree Stores, Inc.,*
 Case Nos. 07-2050 SC, 07-4012 SC, 2011 WL 2682967
 (N.D. Cal. July 8, 2011).................................................................................24, 25

*Cuming v. South Carolina Lottery Comm'n,*
 2008 WL 906705 (D.S.C. March 31, 2008) ...............................................11, 12

*Dukes v. Wal–Mart Stores, Inc.,*
 603 F.3d 571 (9th Cir. 2010) .........................................................................13

*Gen. Tel. Co. of S.W. v. Falcon,*
 457 U.S. 147 (1982)..........................................................................................10

*Hanlon v. Chrysler Corp.,*
 150 F.3d 1011 (9th Cir.1998)......................................................................16, 18

*Hansberry v. Lee,*
 311 U.S. 32 (1940).............................................................................................18

*In re Initial Pub. Offerings Sec. Litig.,*
 471 F.3d 24 (2d Cir. 2006)................................................................................13

*In re Wireless Facilities, Inc.,*
 253 F.R.D. 607 (S.D.Cal.2008)........................................................................16

*Jimenez v. Domino's,*
 238 F.R.D. 241 (CD. Cal. 2006) ...............................................................20, 24

*Johnson v. Schwarzenegger,*
 476 Fed.Appx. 349 (9th Cir. 2012) ..................................................................7

*Lerwill v. Inflight Motion Pictures, Inc.,*
 582 F.2d 507 (9th Cir.1978).............................................................................18

*Marcus v. BMW of North Am., LLC,*
    687 F.3d 583 (3d Cir. 2012)...........................................................................15

*Marlo v. United Parcel Serv., Inc.,*
    639 f.3d 942 (9th Cir. 2011).................................................................. 10, 24

*Mazur v. eBay, Inc.,*
    257 F.R.D. 563 (N.D.Cal.2009) .......................................................................11

*Moheb v. Nutramax Labs., Inc., et al.,*
    No. CV 12-3633-JFW, 2012 WL 6951904 (C.D. Cal. Sept. 4, 2012)... 11, 12, 17

*Rodriguez v. Gates,*
    2002 WL 1162675 (C.D.Cal.2002) ................................................................11

*Safeco Ins. Co. of Am. v. Burr,*
    551 U.S 47, 127 S.Ct. 2201 (2007) ............................................................6, 22

*Smith v. Waverly Partners, LLC,*
    3:10-CV-00028-RLV, 2012 WL 3645324 (W.D.N.C. Aug. 23, 2012).....5, 6, 21

*Vinole v. Countrywide Home Loans, Inc.,*
    571 F.3d 935 (9th Cir. 2009)...........................................................................10

*Wal-Mart Stores, Inc. v. Dukes,*
    __ U.S. ___. 131 S. Ct. 2541, 180 L.Ed.2d 374 (2011) ...................... 1, 9, 10, 19

*Walls v. Sagamore Ins. Co.,*
    274 F.R.D. 243 (W.D. Ark. 2011)....................................................................14

*Watson v. Schwarzenegger,*
    347 Fed.Appx. 282 (9th Cir. 2009) ...................................................................7

*Zinser v. Accufix Research Inst., Inc.,*
    253 F.3d 1180 (9th Cir. 2001), *as amended* 273 F.3d 1266 (9th Cir. 2001)..........1


STATUTES

15 U.S.C §1681a(h) ..............................................................................................5

15 U.S.C. §1681a(k)(1)(B)(ii)...............................................................................6

15 U.S.C. §1681b(a)(3)(B) ....................................................................................5

15 U.S.C. §1681b(b)(2)(A) ....................................................................................5

15 U.S.C. §1681b(b)(3)(A) ........................................................6

Cal. Civ. Code § 1785.20.5(b) ............................................6, 13

Fair Credit Reporting Act ...................................................2, 23


**OTHER AUTHORITIES**

Fed. R. Civ. P. 6(a) ..................................................................8

Fed. R. Civ. P. 6(b)(1)(B) .........................................................7

Fed. R. Civ. P. 23(a) ..............................................1, 4, 9, 10, 11, 20

Fed. R. Civ. P. 23(a)(1) ..........................................................14

Fed. R. Civ. P. 23(a)(2) ..........................................................19

Fed. R. Civ. P. 23(a)(3) .....................................................15, 16

Fed. R. Civ. P. 23(a)(4) ..........................................................17

Fed. R. Civ. P. 23(b) ........................................................1, 4, 9

Fed. R. Civ. P. 23(b)(3) ...............................................10, 19, 20, 24

Fed. R. Civ. P 23(c)(5) ..............................................................1

Fed. R. Civ. P. 26(a) ......................................................4, 14, 23

Fed. R. Civ. P 37(c)(1) .............................................................13

Local Rule 7-3 ....................................................................8, 9

Local Rule 23-3 ...............................................................7, 8, 9

Nagareda, *Class Certification in the Age of Aggregate Proof*,
    84 N.Y.U. L. Rev. 97, 131–132 (2009)..................................19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

## I.    INTRODUCTION AND MATERIAL FACTS

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, __ U.S. ___. 131 S. Ct. 2541, 2550, 180 L.Ed.2d 374 (2011) (quotations and citations omitted). Before certifying a class or a sub-class, the trial court must conduct a "rigorous analysis" to determine if the party seeking certification has met the prerequisites set forth in Federal Rule of Civil Procedure 23. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001), *as amended* 273 F.3d 1266 (9th Cir. 2001). Fed. R. Civ. P 23(c)(5). At all times, the party seeking class certification bears the burden of demonstrating the four requirements in Rule 23(a), and at least one of the requirements in Rule 23(b), have been satisfied. *Id.* In light of this backdrop, Harbor Freight Tools USA, Inc. ("HFT") requests the Court's order denying Plaintiff's motion requesting class certification.

### A.    HFT's Operations

From more than 460 retail stores throughout the country, HFT sells tools. Each HFT store has a Store Manager, who is the highest-ranking employee at the store, and has ultimate responsibility for virtually all aspects of the store's overall performance.  Ex. A, Declaration of Autumn Clemmens, ¶3.  HFT's Store Managers have ultimate authority to hire retail associates who work at their stores.   Ex. A, Clemmens Dec., ¶3.  Store Managers also have responsibility for numerous aspects of the hiring process, including reviewing and evaluating job applications,

interviewing applicants, and selecting candidate who receive offers of employment. Ex. A, Clemmens Dec. ¶3.

HFT Store Managers rely on Human Resources to oversee the company's background check process.  Ex. A, Clemmens Dec., ¶ 3.  Before a Store Manager can extend a job offer to a candidate, the Store Manager must first confirm the person has cleared the company's background checks – which includes a background investigation under the Fair Credit Reporting Act (FCRA). Ex. A, Clemmens Dec., ¶3.  Between August 2002 and June 2012, HFT relied on a company called A-Check American, Inc. (A-Check) to perform background checks. From June 2012 to present, ADP has provided to HFT the same services.  Ex. A, Clemmens Dec. ¶3. ADP uses a different FCRA authorization form than that which Plaintiff received. Ex. A, Clemmens Dec. ¶3.

Although a potential job candidate at a store must first clear a background check before a job offer may be extended, a Store Manager can always decide, in his or her discretion, to fill an open position with a different candidate who has already cleared the background investigation process.  Ex. A, Clemmens Dec. ¶4.  In such circumstances, Store Managers simply access HFT's electronic records, and "reject" any candidates for whom the Store Manager did not make an offer, but whose application remains pending. Such was the case with Plaintiff.  Ex. A, Clemmens ¶¶4.

Plaintiff applied for employment with HFT as a retail warehouse associate. Ex. A, Clemmens Dec. ¶5.  On October 28, 2011, in conjunction with his application

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

for employment, Plaintiff signed an authorization form allowing HFT, through A-Check, to perform a background investigation. Ex. A, Clemmens Dec., ¶5.   On November 4, 2011, before A-Check preformed a background investigation regarding Plaintiff, the hiring manager at the store where he applied decided to hire another, better-qualified candidate.   Ex. A, Clemmens Dec., ¶6; Ex. B to Clemmens Dec. That decision had nothing to do with the substantive results of any FCRA background check, which Plaintiff concedes was not performed until three days later – *i.e.,* on November 7, 2011.  Ex. A, Clemmens Dec. ¶7; Ex. A to Clemmens Dec. (*See* Plaintiff's Brief (Doc. 28) at 10-11, discussing the November 14, 2011 letter from A-Check).   Since A-Check was unaware the Store Manager hired someone else, it performed a background investigation regarding Plaintiff and inadvertently issued various notices based on its background check results. Ex. A, Clemmens Dec. ¶7.

On August 27, 2013, Plaintiff filed this lawsuit. He purports to certify three different classes of individuals with whom he is allegedly similarly situated:

(1) **"The FCRA Class:"** All employees or prospective employees of Defendant residing in the United States … who were the subject of a consumer report which was used by Defendant to make an employment decision during the FCRA statute of limitations period[.]

(2) **"The FCRA Sub-Class:"** All employees of Defendant residing in the United States … who were the subject of a consumer report which was used by Defendant to make an employment decision during the FCRA

statute of limitations period …, against whom Defendant took an adverse employment action based in whole or m [sic] part on information contained in the consumer report before providing a copy of the consumer report as required by the FCRA[.]

(3) **The "California Notice Class:"** All employees or prospective employees of Defendant residing in the United States … who applied for work or who were employed at a Harbor Freight Tools USA, Inc. location in the State of California and who were the subject or [sic] a consumer report which was used by Defendant to make an employment decision during the applicable statute of limitations period[.]

In this case, Plaintiff has not served written discovery. Likewise, he did not serve any disclosures required by Fed. R. Civ. P. 26(a) prior to the filing of his Motion for Class Certification. Instead, Plaintiff disingenuously implies he has obtained documents about his from A-Check *in this case* and he attaches those previously undisclosed documents to his class certification motion. (*See, e.g.,* Plaintiff's Brief (Doc. 28) at 3, footnote 1). The documents Plaintiff attached to his motion were obtained in a prior lawsuit *against A-Check* – a lawsuit (1) in which HFT was not named as a party, and (2) that is wholly unrelated to this case. Doc, 8, Order Declining Transfer.

On the other hand, HFT has served Rule 26(a) disclosures. Moreover, HFT's witnesses and documents will confirm that Plaintiff has not met, and cannot meet, his burden to show all of the elements necessary for class certification under Fed. R.

Civ. P. 23(a) and (b). Consequently, HFT respectfully suggests Plaintiff's class certification motion should be denied.

B.   Operative Legal Principles Regarding Plaintiff's FCRA and California Claims.

**1.   Notice of Intent to Procure a Consumer Report.**

Under the FCRA, employers may use consumer reports – or background checks –for "employment purposes." 15 U.S.C. §1681b(a)(3)(B). An employment purpose is defined to include an evaluation of a "consumer for employment, promotion, reassignment or retention as an employee." 15 U.S.C §1681a(h). Under the FCRA, before procuring a consumer report, an employer must (1) provide a clear and conspicuous disclosure to each applicant in writing "that a consumer report may be obtained for employment purposes," and (2) obtain the applicant's written authorization to procure the report. 15 U.S.C. §1681b(b)(2)(A). Section 1681b(b)(2)(A)(i) requires the disclosure to be given "in a document that consists solely of the disclosure." Notwithstanding, Section 1681b(b)(2)(A)(ii) allows for the authorization to be included in the same document as the disclosure.

The FCRA does not define the term "clear and conspicuous," and there is a dearth of case law interpreting that term. At least one federal district court in North Carolina has authorized the inclusion of a release of liability with a disclosure form provided the release language is "not so great a distraction" as to discount the effect of the disclosure. *Smith v. Waverly Partners, LLC*, 3:10-CV-00028-RLV, 2012 WL 3645324, at *6 (W.D.N.C. Aug. 23, 2012). In *Smith*, the federal district court found

the waiver of rights language included in the employer's combined disclosure/authorization was kept sufficiently distinct from the disclosure language so as not to render it ineffective. *Id.*

### 2.    Pre-Adverse Action Notice Requirements.

The FCRA states that "before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates" the consumer report and summary of rights. 15 U.S.C. §1681b(b)(3)(A). Consequently, applicants for employment must be given an opportunity to correct erroneous information appearing in the report. 15 U.S.C. § 1681b(b)(3)(A). And, in the employment context, an adverse action is "a denial of employment or any other decision for employment purposes that adversely affects any current or prospective employee." 15 U.S.C. §1681a(k)(1)(B)(ii). As the Supreme Court noted, "[N]ot all 'adverse actions' require notice, only those 'based … on' information in a credit report." *Safeco Ins. Co. of Am. v. Burr,* 551 U.S 47, 63, 127 S.Ct. 2201, 2212 (2007).

Contrary to Plaintiff's allegations in his Complaint and class certification motion, California law does not require that notice be given *before* an adverse action. (Plaintiff's Brief (Doc. 28) at 1-2.  Instead, California law only states "[w]henever employment *is denied* either wholly or partly because of information contained in a consumer credit report … the user *shall so advise* the consumer against whom the adverse action has been taken[.]"  Cal. Civ. Code § 1785.20.5(b) (emphasis added).

## II.  PLAINTIFF'S CLAIMS ARE INAPPROPRIATE FOR CERTIFICATION UNDER FED. R. CIV. P. 23.

### A.  Plaintiff's (Second) Motion for Class Certification is Untimely.

Plaintiff's current motion to certify his claims as a class action under Fed.R.Civ.P. 23 is late. On December 12, 2013, or three days after the deadline to set his motion for class certification for hearing, and without (1) seeking leave, or (2) articulating excusable neglect under Fed.R.Civ.P. 6(b)(1)(B), Plaintiff filed his second untimely motion requesting class certification and purporting to set a hearing regarding the motion on January 13, 2014. Doc. 28. Because Plaintiff's motion for class certification is untimely, and thus he has not complied with the Court's Standing Order, Scheduling and Case Management Order, and L.R. 23-3, HFT respectfully asserts that his motion should be stricken and not considered by the Court. *Johnson v. Schwarzenegger*, 476 Fed.Appx. 349, 350 (9th Cir. 2012) (affirming class certification denial, noting "the district court acted within its discretion" when doing so, and concluding L.R. 23-3 is consistent with Fed.R.Civ.P. 23) (citations omitted); *Watson v. Schwarzenegger*, 347 Fed.Appx. 282, 284-85 (9th Cir. 2009) (affirming denial of class certification motion as untimely under L.R. 23-3 and noting unnecessary delay in filing did not constitute excusable neglect) (citations omitted).

Plaintiff's prior attempts to file a motion for class certification were also untimely. The Court's Scheduling and Case Management Order provides "[a]ll law and motion matters, except for motions in limine, must be set for *hearing* (not filed)

by the motion cut-off date specified on the last page of this order" Doc. 25 at 5, ¶ 3 (emphasis in original). The last page of the Scheduling and Case Management Order states "*Motions for class certification shall be filed in accordance with Local Rule 23-3." According to L.R. 23-3, motions for class action certification must be filed "Within 90 days after service of a pleading purporting to commence a class action …."

On August 27, 2013, Plaintiff filed his Complaint, which purports to commence a class action. *See* Doc. 1, *passim*. On September 9, 2013, he served his Complaint. Doc. 2. Accordingly, by December 9, 2013 – *i.e.*, 90 days from as calculated under Fed.R.Civ.P. 6(a) – Plaintiff's motion seeking class action certification should have been set for a *hearing*, not merely filed. It was not. Instead, on December 9, 2013, Plaintiff improvidently filed a motion for class certification with a hearing set for February 24, 2014. Doc. 26 at 1. The Court ordered Plaintiff's initial motion for class certification stricken and noted it would not be considered by the Court because it did not comply with paragraph 5(a) of the Court's Standing Order – *i.e.*, "no motion shall be noticed for hearing for more than 35 calendar days after service of the motion unless otherwise ordered by the Court." Doc. 27, *referring to* Doc. 6 at 6, ¶ 5(a).

Just as the Court did with respect to Plaintiff's first brief, HFT respectfully urges the Court to strike Plaintiff's equally belated re-filed brief.

### B.    Plaintiff did not Comply with the Spirit, or the Letter, of L.R. 7-3.

As a necessary precedent to filing motions, parties must "discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential resolution." L. R. 23-3. *See also* Doc. 6 at 6, ¶5(b) (emphasis in original). In its Standing Order, the Court explained "[c]ounsel should discuss the issues with sufficient detail so that if a motion is still necessary, the briefing may be directed to those substantive issues requiring resolution by the Court." Doc. 6 at 6-7, ¶5(b). Plaintiff did not comply with L.R. 7-3 before filing his class certification motion.

Plaintiff incorrectly asserts "This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on December 2, 2013." Although counsel for the parties spoke on December 2nd, Doc. 28 at 3,§ III, the extent of the conversation regarding class certification was Plaintiff's counsel merely advising they intended to file a motion.  Ex. C, Declaration of Evan Moses, ¶2. There was no discussion "with sufficient detail," so there was no opportunity to narrow the issues for resolution. Consequently, Plaintiff did not even attempt to comply with L.R. 7-3, meaning denial of his motion is justified.

### C.    Plaintiff Has Not Met His Burden of Demonstrating Class Certification Requirements in Rule 23(a) and (b).

#### 1.    Relevant Legal Standards for Class Certification Under Fed. R. Civ. P. 23.

"A party seeking class certification must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Dukes*, 131

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

S.Ct. at 2551. To justify a departure from the rule that litigation is conducted by, and on behalf of, the individual named parties only, a class representative must be part of the class and suffer the same injury as the class members. *Id*

Rule 23 does not set forth a mere pleading standard.  *Dukes,* 131 S. Ct. at 2551. Instead, Plaintiff bears the burden of demonstrating all of the requirements of Rule 23(a), as well as Rule 23(b)(3) are met. *Marlo v. United Parcel Serv., Inc.*, 639 f.3d 942, 947 (9th Cir. 2011). When deciding if this burden is met through sufficient evidence, courts conduct a "rigorous analysis." *Gen. Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 155-56, 161 (1982). In other words, Plaintiff must affirmatively show there are, *in fact*, sufficiently common questions of law or fact, and that other certification requirements have been met. *Id*. Accordingly, the Court may be required to probe behind the pleadings, as actual (not presumed) conformance with Rule 23 remains indispensable. *Id*.

This Court's "rigorous analysis" will undoubtedly entail some overlap with the merits of the Plaintiff's underlying claims. *Dukes*, 131 S. Ct. at 2551. This is true because class certification generally involves considerations that are enmeshed in the factual and legal issues comprising the Plaintiff's claims. *Id.* at 2552. Likewise, "the district court may consider the merits of the claims to the extent that it is related to the Rule 23 analysis."  *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 947, n.15 (9th Cir. 2009).  In this case, looking beyond the mere allegations, and analyzing the *facts – i.e.*, the few Plaintiff has offered, as well as those HFT submits – shows

that Plaintiff's claims lack the heft necessary to multiply these proceedings and unlock the door to class certification.

### 2. Class Certification Thresholds.

#### a. Plaintiff's Proposed Classes Are Not Ascertainable.

"As a threshold matter, and apart from the explicit requirements of Rule 23(a), the party seeking class certification must demonstrate that an identifiable and ascertainable class exists." *Moheb v. Nutramax Labs., Inc., et al.*, No. CV 12-3633-JFW, 2012 WL 6951904, at *3 (C.D. Cal. Sept. 4, 2012) (citing *Mazur v. eBay, Inc.,* 257 F.R.D. 563, 567 (N.D.Cal.2009)). The class definitions "must be sufficiently definite so that it is administratively feasible to determine whether a particular person is a class member." *Moheb, 2012 WL 6951904 at *3* (citations omitted). *Rodriguez v. Gates,* 2002 WL 1162675 at *8 (C.D.Cal.2002) ("A class definition should be 'precise, objective and presently ascertainable.'").

Proposed classes are not ascertainable when class definitions depend on the merits of a case or require "extensive factual inquiry." *See Cuming v. South Carolina Lottery Comm'n*, 2008 WL 906705, at *3 (D.S.C. March 31, 2008). Moreover, proposed classes are not ascertainable when "[s]uch members have no injury and no standing to sue." *Moheb,* 2012 WL 6951904 at *3. *Bishop v. Saab Auto. A.B.,* 1996 WL 33150020, *5 (C.D.Cal. Feb.16, 1996) ("courts have refused to certify class actions based on similar 'tendency to fail' theories because the purported class includes members who have suffered no injury and therefore lack standing to sue")). All such deficiencies exist here.

Plaintiff has not demonstrated that identifiable and ascertainable class(es) exist. Regarding the proposed sub-classes, Plaintiff has crafted definitions requiring answers to several *factual* questions – *e.g.*, (1) whether a consumer report was used, in whole, or in part, by individual HFT Store Managers when exercising their discretion and making adverse employment decisions, (2) when did HFT take the adverse employment action (either before the background investigation was performed, or after), (3) what forms were given to putative class members, (4) whether A-Check or ADP made mistakes when issuing pre-adverse employment action notices, *etc*.

Furthermore, Plaintiff has not demonstrated that his sub-class definitions are so definite "that it is administratively feasible to determine whether a particular person is a class member." *Moheb*, 2012 WL 6951904, at *3 (citation omitted). Indeed, his definitions would present an administrative quagmire in attempting to identify members, and would require exactly the type of "extensive factual inquiry" courts have held to be too administratively burdensome to warrant class certification. *Cuming*, 2008 WL 906705, at *3 (citations omitted).

Although Plaintiff fails to temporally define his class, HFT notes it utilized two different vendors, each of which used different forms.  (Ex. A, Clemmens Dec. ¶3). Consequently, given his proposed class definition, Plaintiff lumps together putative class members who may have been given wholly compliant forms – *i.e.*, he has not alleged, much less provide factual support, for the proposition that forms

provided by ADP to some putative class members were allegedly deficient. Accordingly, Plaintiff's proposed class is fatally vague and unascertainable.

Finally, no damages or injury have been alleged, much less demonstrated, for the California sub-class. This is particularly true because Plaintiff cites no authority indicating pre-adverse action notification is required by California law. *See* Cal. Civ. Code § 1785.20.5(b). Moreover, Plaintiff's proposed California sub-class definition is not limited to those who suffered an *adverse* employment action. Instead, his proposed class is defined to include anyone for whom HFT made any type of "employment decision" – whether favorable or adverse. Accordingly, Plaintiff's sub-class definition would impermissibly encompass individuals who had no injury, much less one similar to the injuries allegedly incurred by Plaintiff.

In sum, none of Plaintiff's proposed classes meet the Court's threshold requirement that they be ascertainable. Consequently, Plaintiff's motion should be denied for this reason.

      **b.**    **Smith Has Neither Adduced, Nor Disclosed, Evidence Sufficient to Withstand the "Rigorous" Analysis of His Proposed Class Claims.**

It is axiomatic that a plaintiff must present *evidence*, beyond mere speculation and conjecture, that each Rule 23 requirements has been met. *In re Initial Pub. Offerings Sec. Litig*., 471 F.3d 24, 41 (2d Cir. 2006). "While plaintiffs need not make more than allegations as to their substantive claims, whether the suit is appropriate for class resolution *must be actually demonstrated, not just alleged*, to the district court's satisfaction." *Dukes v. Wal–Mart Stores, Inc.,* 603 F.3d 571, 590 (9th Cir.

2010) (*en banc*) (emphasis added).  Similarly, if a party fails to disclose evidence during discovery, he cannot use that evidence. Fed. R. Civ. P 37(c)(1).

Plaintiff has not demonstrated that his claims are entitled to class treatment. Instead, his class certification motion is almost entirely premised on his own unfounded assertions, speculation, and previously undisclosed documents and other evidence apparently obtained in a prior lawsuit. He has not served *any* witness, nor has he timely produced or disclosed evidence under Fed. R. Civ. P. 26(a) prior to the filing of his Motion.  (Plaintiff served his initial disclosures on December 20, 2013 – the Friday before HFT's response was due.  *See* Ex. B, Plaintiff's Initial Disclosures.)  Likewise, he has not attempted to demonstrate that he, and his counsel (whose declaration he partially relies on), have personal knowledge of the alleged facts they purportedly attest.

Simply put, Plaintiff inadequately relies on nothing more than mere conjecture founded on undisclosed evidence and witnesses to support his contention that there is an ascertainable class of individuals who were subjected to the same alleged violations and suffered the same harm.  Accordingly, he has fallen far short of meeting his lofty burden to show that class certification is justified in this matter.

### c.   Smith Cannot Satisfy the Numerosity Requirement of Rule 23(a)(1) for His Proposed Classes.

Rule 23's numerosity requirement may be fulfilled if "the class is so large that joinder of all members is impracticable," Fed. R. Civ. P. 23(a)(1), which requires a showing that joinder "extremely difficult or inconvenient." *Id. See Walls v.*

*Sagamore Ins. Co.*, 274 F.R.D. 243, 254 (W.D. Ark. 2011). In other words, the test is not simple numerousness. Importantly, Plaintiff may not merely *assume,* without evidentiary support, that joinder is impracticable.  *See Marcus v. BMW of North Am., LLC*, 687 F.3d 583, 591 (3d Cir. 2012).

Plaintiff entirely relies on his own conclusions that his proposed class is sufficiently numerous. For example, he contends that all job applicants with the statutory period received the same disclosure and notice. (Doc. 28 at 11-12). But he presents no *evidence* to this effect.  (Doc. 28 at 12). Instead, he merely speculates that "one applicant per location" constitutes numerosity. And perhaps more importantly, Plaintiff fails to demonstrate his proposed classes are so numerous that joinder is impracticable – *e.g.*, joinder is difficult or inconvenient. Indeed, presuming numerosity is a foregone conclusion, he makes no effort to provide information about the actual number of class members, where they are located, whether they can they be joined here, and if not, why not, etc.

It is Plaintiff's burden to present evidence, beyond mere speculation, that each of his proposed classes meets Rule 23's numerosity requirement. Since Plaintiff merely assumes numerosity, he has not met his heightened burden and the Court should therefore deny his class certification motion.

### d.    Plaintiff Cannot Satisfy the Typicality Requirement Under Rule 23(a)(3).

Smith baldly concludes "[s]ince Smith's claims rise and fall on the same basis as the Classes' claims, typicality is satisfied." (Doc. 28 at 21). Although Plaintiff's

statement is not surprising because he is only armed with his assumptions and conjecture, the evidence establishes shows that Plaintiff could not me more atypical from the classes he purports to represent.

To satisfy Rule 23(a)(3), "the claims or defenses of the representative parties [must be] typical of the claims or defenses of the class," – *i.e.*, Plaintiff's claims must be "reasonably coextensive with those of absent class members; they need not be substantially identical." *Dukes,* 509 F.3d at 1184 (quoting *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir.1998)). Courts have found that typicality is *not* satisfied when evidence needed to prove the named plaintiff's claims is not probative of putative class members' claims. *See Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Group, L.P.,* 247 F.R.D. 156, 178 (C.D. Cal.2007); *see also In re Wireless Facilities, Inc.,* 253 F.R.D. 607, 611 (S.D.Cal.2008).

Plaintiff's personal claims are not typical of his class theories. Although he self-servingly asserts that potential class members "were all subject to Harbor Freight's uniform, largely automatic hiring process," he has offered no *evidence* to that effect. (Doc. 28 at 14). Instead, HFT's evidence shows it did not use the same background check vendor or forms during the period seemingly at issue in this case. Thus, Plaintiff's claims premised on allegedly defective forms cannot be typical of putative class members who received a form that differs from the one Plaintiff identifies as being allegedly deficient.

Furthermore, HFT's undisputed evidence shows Plaintiff suffered an adverse employment action *before* A-Check performed a background check – a fact Plaintiff

16                                      Case No. 2:13-cv-06262-JFW-VBK

may have uncovered had he conducted discovery before moving for class certification. In other words, it was impossible for HFT to have taken adverse employment action based in whole, or in part, on a background check that had not yet been performed.  Nevertheless, Plaintiff mistakenly purports to be "typical" of a class of individuals who suffered an adverse action *after* a consumer report was obtained, or in the case of his proposed California sub-class, individuals who suffered any type of employment action – whether adverse or not.

Circumstances regarding Plaintiff's claims and HFT's defenses to the same are inarguably "unique" and thus ill-suited for class treatment because his claims are no doubt atypical. Consequently, it is the unique facts of Plaintiff's case, not facts regarding his proposed classes, that threaten to become the focus of this litigation. And, since the facts regarding Plaintiff's circumstances are unique, there is every likelihood there are other alleged class members who experienced equally unique circumstances. In similar situations, this Court has determined that typicality is lacking. *Moheb*, 2012 WL 6951904, at *3 ("[C]lass certification is inappropriate where the putative class representative is subject to unique defense which threaten to become the focus of the litigation."). Accordingly, the Court should deny Plaintiff's class certification motion because he cannot demonstrate the requisite typicality under Rule 23.

### e.   For Similar Reasons, Plaintiff Cannot Satisfy the Adequacy Requirement Set Forth in Rule 23(a)(4).

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a)(4). To satisfy constitutional due process concerns, "absent class members must be afforded adequate representation before entry of a judgment which binds them." *Hanlon,* 150 F.3d at 1020 (citing *Hansberry v. Lee,* 311 U.S. 32, 42–3 (1940)). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Id.* (citing *Lerwill v. Inflight Motion Pictures, Inc.,* 582 F.2d 507, 512 (9th Cir.1978)). Serious questions exist as to Plaintiff's adequacy as a class representative.

Although Plaintiff and his counsel have suggested they will vigorously represent the putative absent class members' interests, they have already pursued and resolved claims – claims that could have, given Plaintiff's simplistic views on class certification, proceeded as class claims – on Plaintiff's behalf alone.  (Doc. 28 at 15-16).   Moreover, the undisputed evidence shows the unique facts applicable to Plaintiff's circumstances, *supra*, render him inadequate to protect the interests of others who experienced different circumstances. Simply stated, Plaintiff and his counsel's ability to vigorously and adequately navigate the highly individualized

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

factual circumstances as a class action is in serious question, and Plaintiff has failed to show adequacy under Rule 23.

### f.  Plaintiff Cannot Satisfy Rule 23(a)(2)'s Commonality Requirement and Rule 23(b)(3)'s Predominance Requirement.

"[C]laims must depend upon a common contention—for example, the assertion of discriminatory bias on the part of the same supervisor. That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." –*Dukes*, 131 S. Ct. at 2551.

### i.  Plaintiff and Class Members Lack Commonality

On its face, Rule 23(a)(2) requires a plaintiff to merely show there are questions of law or fact common to the class. *Dukes*, 131 S. Ct. at 2551. However, as the United States Supreme Court has explained, this language is easy to misread, since "[a]ny competently crafted class complaint literally raises common questions." *Id*. (quoting Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 131–132 (2009)). Accordingly, Plaintiff's claims "must depend upon a common contention" that is "*must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.*" *Id*. at 2551.

Plaintiff cannot substantiate that his class claims turn on a single issue that may be resolved "in one stroke." Instead, the incontrovertible evidence reveals there are no common answers to Plaintiff's supposedly common questions.

### ii.  The Predominance Requirement of Rule 23(b)(3)

In March of this year, the Supreme Court found that predominance under Rule 23(b)(3) requires a showing that "the questions of law or fact common to class members [must] predominate over any questions affecting only individual members." *Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1430 (U.S. 2013). In *Behrend*, the Supreme Court noted that "Rule 23(b)(3)'s predominance criterion *is even more demanding* than Rule 23(a)." *Id.* at 1432. (internal citations omitted) (emphasis added).

In meeting the predominance standard, the plaintiffs in *Behrend* were required to show that "damages are susceptible of measurement across the entire class." *Id.* at 1433. Failure to make a sufficient showing meant that "[q]uestions of individual damage calculations will inevitably overwhelm questions common to the class." *Id*. Therefore, Rule 23(b)(3) certification requires that "questions of law or fact common to class members predominate over any questions affecting only individual members" and that "a class action is superior to other available methods for ... adjudicating the controversy." *Id.* at 2555-56. When determining predominance, the court looks to the substantive issues raised by the plaintiffs, *and the proof relevant to each issue*." *Jimenez v. Domino's*, 238 F.R.D. 241, 251 (CD. Cal. 2006) (emphasis added).

### g.   Whether the Proposed Disclosure Class Members Received an Insufficient Disclosure Form Will Require Individualized Inquiries.

Although Plaintiff merely presumes HFT's application and hiring practices were the same for all proposed class members, the evidence shows otherwise. In fact, there may be other dissimilarities between purported class members. For example, individualized issues could exist regarding whether releases in a disclosure form were "not so great a distraction" as to discount the effect of the disclosure. *Smith v. Waverly Partners, LLC*, 3:10-CV-00028-RLV, 2012 WL 3645324, at *6 (W.D.N.C. Aug. 23, 2012). Accordingly, individualized inquiries must be made to determine who received what form, when the received the forms, whether allegedly surplus language was a distraction, etc. These individualized issues defeat commonality.

### h.   When an Adverse Action was Taken Requires Individualized Inquiries.

The evidence regarding Plaintiff's pre-adverse employment action claim confirm commonality cannot exist as to his purported sub-class premise don the same legal theory. The hiring manager "rejected" Plaintiff in HFT's system on November 4, 2011 – *i.e.*, three days before A-Check performed and HFT obtained a consumer report on November 7, 2011. Because the adverse employment action was taken several days before the report was obtained, it could not have been considered, in whole, or in part, when taking the adverse employment action. There simply is no evidence that Plaintiff's unique circumstances were the same as the putative class members'. In other words, even if there was a generic, common question of law –

*e.g.*, was there an FCRA violation – Plaintiff has failed to show that there is evidence suggesting there would be common answers justifying prosecution of his personal claims as a class action.

The inadequacy of Plaintiff's commonality argument is also evident from his proposed class definition. More specifically, whether a consumer report is merely obtained (as stated in Plaintiff's proposed class definition) is not the sole inquiry to show an FCRA violation regarding pre-adverse action notice requirements. Instead, *when* the report was obtained is a far more salient question. Moreover, there is no evidence in this case that the answer to that question is common to all putative class members. Indeed, the evidence would suggest the opposite to be true – *i.e.*, determining when adverse employment decisions were made relative to the procurement of a credit report would require a Store Manager-by-Store Manager inquiry.

In the case, evidence regarding supposed FCRA violations renders the alleged class members helplessly heterogeneous. Accordingly, Plaintiff's claims are sufficiently dissimilar that they are ill-suited for class-wide treatment.

### i. Whether any Particular Adverse Action Was Based on Information in a Consumer Report Will Require an Individualized Inquiry.

Even if Plaintiff could somehow overcome Rule 23's other hurdles to class certification, he cannot avoid the reality that myriad individualized issues manifest when analyzing potential FCRA violations. In particular, the Supreme Court has

concluded that information in a consumer report must be the "but-for," or sole, reason for an actionable adverse action. *See Burr*, 551 U.S. at 63-64 n.14.

Individualized evidence will be required to prove each class member's claim. More specifically, it will be necessary to determine why (not just when) HFT made each adverse action decision. Each Store Manager that made an adverse hiring decision would have to testify about his or her rationale for his or her decisions. And there is no evidence that they will all testify in a uniform manner – particularly with regard to the impact, if any, that a consumer report had on his or her decision.

Testimony from each Store Manager, about every hiring decision, is the antithesis of commonality and undeniably means that supposedly common issues of law *and* fact do not predominate. Accordingly, HFT asks the Court to deny Plaintiff's motion for class action certification his claims lack the requisite degree of commonality and predominance.

### j.    Questions Regarding Class Members' "Actual" Damages Will Overwhelm Questions Common to the Class.

In meeting the predominance standard, the plaintiffs in Behrend were required to show that "damages are susceptible of measurement across the entire class[,]" and their failure to establish this meant "[q]uestions of individual damage calculations will inevitably overwhelm questions common to the class." *Behrend*, 133 S.Ct. at 1433.  Similar issues regarding damages exist here and preclude class certification. Plaintiff's belated initial Rule 26(a) disclosures reveal class members will be seeking actual damages under the FCRA. (Ex. B).  As in *Behrend*, Plaintiff has not shown

that actual damages are susceptible of measurement across the entire class.  Also like the plaintiffs in *Behrend*, whether, or to what extent, each class member here was injured (and whether HFT's actions and alleged non-compliance with the FCRA were the cause of such damages) create additional individualized fact issues that will overwhelm any questions common to the class.  As the Court determined in *Behrend*, the court here should conclude that questions of individual, actual damages will overwhelm questions common to the class.  Predominance, therefore, is not met and is yet another reason class certification should be denied.

    D.    <u>Plaintiff Cannot Show that a Class Action Is Superior to Other Ways to Adjudicate this Action.</u>

Under Rule 23(b)(3), Plaintiff must demonstrate that a class action is superior to other available means to adjudicate this controversy. Plaintiff cannot make this showing because he fails to present a viable trial plan or expert report to support his argument that class certification is appropriate. Likewise, he has failed to show that his claims, and HFT's defenses, are susceptible to representative proof. *Cruz v. Dollar Tree Stores, Inc.*, Case Nos. 07-2050 SC, 07-4012 SC, 2011 WL 2682967 at *5 (N.D. Cal. July 8, 2011) ("The Ninth Circuit has affirmed the impropriety of relying on representative testimony where plaintiffs have provided no reliable means of extrapolating that testimony to the class as a whole.") (*citing Marlo,* 639 F.3d 942, 949 (9th Cir. 2011). See also *Jimenez*, 238 F.R.D. at 251-52 (CD. Cal. 2006) (confirming the defendant-employer had the right to cross-examine each employee to determine if the defendant-employer was liable and concluding that individual, fact-

specific analyses and issues of proof meant the allegedly common questions did not predominate ). Instead, HFT has shown that variations in the forms and relevant employment decisions present individualized issues and evidence rendering Plaintiff's claims inappropriate for class-wide adjudication. *Cruz*, 2011 WL 2682967 at *8.

Plaintiff's claims and HFT's defenses require individualized proof, and may even implicate individual credibility determinations regarding Store Managers' testimony about their hiring decisions.   Consequently, Plaintiff's purportedly common questions of fact and law do not predominate, and his quest for class certification should be denied.

## III.   CONCLUSION

For the reasons set forth above, HFT requests the Court's order denying Plaintiff's Motion for Class Certification.


DATED: December 23, 2013                OGLETREE, DEAKINS, NASH,
                                        SMOAK & STEWART, P.C.


                                        By:  /s/ Evan R. Moses
                                             Evan R. Moses
                                             Patrick Hulla
                                             Aaron H. Cole

                                        Attorneys for Defendant
                                        HARBOR FREIGHT TOOLS USA INC.